IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

TAYLOR RAY NORWOOD          )
                           )
v.                         )          No. 1:13-0054
                           )
NANCY A. BERRYHILL[1]       )
Acting Commissioner of Social Security    )

# M E M O R A N D U M

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which Defendant has responded (Docket Entry No. 17). Plaintiff has also filed a subsequent reply to Defendant's response (Docket Entry No. 19). This action is before the undersigned for all further proceedings pursuant to the consent of the parties and referral of the District Judge in accordance with 28 U.S.C. § 636(c) (Docket Entry No. 23).

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

# I. INTRODUCTION

Plaintiff filed an application for DIB on October 12, 2010, and an application for SSI on November 23, 2010. *See* Transcript of the Administrative Record (Docket Entry No. 10) at 74-75.[2] He alleged a disability onset date of November 1, 2010. AR 74-75. Plaintiff asserted that he was unable to work due to fibromyalgia, diabetes, high blood pressure, and back problems. AR 82-83.[3]

Plaintiff's applications were denied initially and upon reconsideration AR 74-77. Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff testified at a hearing before ALJ Donna Lefebvre on February 27, 2012. AR 35. On April 13, 2012, the ALJ denied the claim. AR 20-22. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 22, 2013 (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

# II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on April 13, 2012. AR 22. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

[3] The Commissioner additionally found evidence of anxiety. AR 82-83.

2. The claimant has not engaged in substantial gainful activity since November 1, 2010, his alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Cervical and lumbar degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

\*\*\*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\*\*\*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). He can lift or carry up to fifty pounds occasionally and twenty-five pounds frequently, and can sit, stand or walk up to six hours in an eight-hour day. He can frequently balance, stoop, kneel, crouch, crawl and climb ramps or stairs, but only occasionally climb ladders, ropes and scaffolds.

\*\*\*

6. The claimant is capable of performing his past relevant work as a progressive assembler, security guard and driver[.] This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

\*\*\*

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

AR 25-30.

# III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions

of credibility. *See, e.g.*, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g.*, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if he applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v.*

*Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render him presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to his past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot

satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step four of the five-step process. The ALJ determined that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was able to perform past relevant work as a progressive assembler, security guard, and driver, and thus concluded that Plaintiff has not been under a disability since the alleged onset date of November 1, 2010. AR 25-30.

### D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by: (1) erroneously rejecting the opinion of Pat Burks, APN; (2) failing to support the RFC determination with substantial evidence; and (3) failing to properly evaluate Plaintiff's credibility. DE 14 at 1-2. Plaintiff therefore requests that this case be reversed and benefits awarded, or, alternatively, that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration by a new ALJ. *Id.* at 17.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery*, 771 F.2d at 973. Furthermore, a court can reverse

the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala,* 25 F.3d 316, 318 (1994). The Court will address each of Plaintiff's assertions of error below.

## 1. The ALJ's consideration of the Medical Source Statement completed by nurse practitioner Pat Burks.

Plaintiff claims that the ALJ violated Social Security Ruling ("SSR") 06-03p by failing to sufficiently explain the basis on which she rejected the opinion contained in the Medical Source Statement ("MSS") completed by Pat Burks, APN. DE 14 at 8. Ms. Burks recommended several physical restrictions, including no lifting more than 20 pounds, no carrying more than 10 pounds, sitting for no more than two hours during a workday, standing for no more than one hour during a workday, walking for no more than 30 minutes during a workday, and further opined that Plaintiff would be required to lie down for more than four hours during a workday. AR 444-45. In support of Ms. Burks' opinion, Plaintiff quotes significant portions of SSR 06-03p, including its statement that "[o]pinions from [] medical sources[] who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects …" 2006 WL 2329939, at *3 (August 9, 2006), and also contends that the ALJ failed to evaluate the MSS under relevant regulatory factors. DE 14 at 10-11. Plaintiff additionally claims that the physical restrictions contained in the MSS are supported by objective medical evidence. *Id*. at 11-12.

The Court notes that in addition to Ms. Burks, the MSS in question was signed by Dr. Suresh Acharya, who was credited as the author of the opinion contained in the MSS:

> [T]here is only one medical source statement in the file regarding the claimant's ability to function physically. It is purportedly from Suresh Acharya, M.D. … The

undersigned gives no weight to this medical source statement since the claimant testified he has never even seen the physician who signed it, and because it is inconsistent with his or her own records, as well as all of the other evidence in the record.

AR 29. Despite this attribution to Dr. Acharya, both parties agree that it was actually Ms. Burks who completed the MSS. Plaintiff does not contend that the ALJ violated the "treating physician rule" contained in 20 C.F.R. 404.1527(c),[4] nor does he contend that Ms. Burks is an "acceptable medical source" under 20 C.F.R. 404.1502.[5] The latter is critical to the Court's analysis because, as stated in SSR 06-03p, only "acceptable medical sources" can provide medical opinions that are entitled to controlling weight. 2006 WL 2329939, at *2 (August 9, 2006). An opinion from an "other source" such as Ms. Burks cannot establish the existence of medically determinable impairment; an "acceptable medical source" is required to do so. *Id.*

Here, Plaintiff points to no opinion from a treating provider that could establish the existence of an impairment or be given controlling weight. As noted by the ALJ, the MSS completed by Ms. Burks represents the only opinion offered by Plaintiff in support of his alleged physical disability. Nevertheless, Plaintiff correctly notes that the opinion from a nurse practitioner such as Ms. Burks should be "evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse*, 502 F.3d at 541 (internal citations omitted). With respect to the length of Plaintiff's treatment with Ms. Burks, Plaintiff points the Court to his testimony that he had treated with Ms. Burks "[m]aybe a half a dozen time or more" over the course of a year. DE 14 at 9; AR 67. Although Plaintiff fails to reference any actual records documenting such treatment, the Court notes that Plaintiff treated with Pat Burks at the

---

[4] For purposes of Plaintiff's Title XVI claim, 20 C.F.R. § 416.927(c) is the SSI equivalent of 20 C.F.R. § 404.1527(c).

[5] *See also* 20 C.F.R. § 416.902.

North Terrace Medical Clinic on March 16 and December 1 of 2011. AR 397-98, 400-01.[6] There are two other notes in the North Terrace records, dated August 2, 2011 and January 24, 2012, although these notes do not appear to include all pages from these visits and fail to include signature lines from a provider. AR 396, 399. Plaintiff has therefore provided evidence that he treated with Ms. Burks at least twice but not more than four times.

The Court next considers the consistency of Ms. Burks' opinion with evidence of record. Plaintiff claims that the restrictions contained in the MSS are consistent with imaging studies of Plaintiff's back and knee. DE 14 at 11. Ms. Burks listed swelling and "degeneration" of the right knee as support for her recommendations regarding lifting, carrying, sitting, standing, and walking. AR 444-46. The Court notes, however, that an MRI of Plaintiff's right knee taken just four days before the MSS was completed revealed only mild right knee degenerative disease. AR 455. There is also no indication that Ms. Burks provided any treatment for Plaintiff's right knee during her four visits with Plaintiff. AR 396-401. Indeed, Plaintiff only mentioned right knee pain during one such visit, and there is no evidence that he received any treatment for the right knee during this visit. AR 396.

Ms. Burks similarly cited "degeneration" of Plaintiff's lumbar spine as support for her recommended physical limitations, as well as "tenderness and spasm in [the] cervical and lumbar spine." AR 444, 446. However, during her final documented visit with Plaintiff on January 24, 2012, approximately one month before she completed the MSS, Ms. Burks found no tenderness or muscle tightness in Plaintiff's lower back, no paresthesia, and a straight leg raise test that was negative bilaterally. AR 396. The Court notes that Plaintiff made no complaints of back pain during three out of his four visits with Ms. Burks, including his most recent visit just one month

_____

[6] The Court assumes that Pat Burks treated Plaintiff on March 16, 2011 despite the fact that the signature line on this medical note says only, "Pat." AR 401.

before the MSS was completed. AR 396-398, 400-01. Even when Plaintiff did complain of back pain on August 2, 2011, Ms. Burks again recorded no tenderness or muscle tightness and a negative straight leg raise test. AR 399. She also provided no diagnosis or recommended treatment for Plaintiff's condition. AR 399.

Imaging studies likewise show little evidence that would support Ms. Burks' opinion of disabling pain. Imaging of Plaintiff's lumbar spine performed on October 20, 2010 revealed no degenerative disc space narrowing, no facet degenerative change, and normal vertebral body height and alignment. AR 435. On February 15, 2012, an x-ray revealed mild degenerative disc disease, which included mild diffuse lumbar spondylosis. AR 427. The interpreting radiologist also "suspected" mild to moderate degenerative disease in the cervical spine at the C5-6 level, a finding that the radiologist described as being "poorly evaluated by this study." AR 428. An MRI on February 22, 2012, just three days before the MSS was completed, demonstrated mild degenerative changes in the lumbar spine, including a mild bulge at the L5-S1 and L4-5 levels, and no evidence of protrusion or spinal or foraminal stenosis. AR 456. Notably, these degenerative changes at the L5-S1 and L4-5 levels were present in February of 2002, more than eight years prior to the alleged onset of disability. AR 287. The significant physical restrictions recommended by Ms. Burks, including a requirement that Plaintiff be allowed to lie down for more than half of the workday, thus appear to find little support from objective medical evidence in the record.

The Court is similarly uninspired by "how well" Ms. Burks "explain[ed] [her] opinion.". *Cruse*, 502 F.3d at 541. Ms. Burks cites the degenerative conditions in Plaintiff's back and knee as medical and clinical findings to support her restrictions (AR 444, 447), but as previously discussed, these conditions have been identified as mild in severity. Ms. Burks also lists

"tenderness and spasm in cervical and lumbar spine" as support, despite such symptoms being notably absent from the notes documenting her treatment of Plaintiff, as discussed *supra*. Ms. Burks further cites Plaintiff's previous right knee surgery as support for her opinion (AR 446), although the Court notes that this arthroscopic procedure took place in March of 2005, over five years before the date of alleged onset of disability. AR 244. There is no indication that Plaintiff suffered any complications, and he testified that he continued to work for several years after the procedure. AR 46-49.

Finally, Ms. Burks stated that despite Plaintiff's alleged physical pain, "anxiety seems to be his worst problem" (AR 448), an opinion that is not supported by the record. Plaintiff cites as evidence to support this opinion a single visit in October of 2010 during which it was noted that Plaintiff appeared "nervous" with "anxiety due to pain" and a "domestic situation." AR 440. However, Ms. Burks noted no problems with Plaintiff's mental status at any point during her treatment of Plaintiff. AR 396-401. During her most recent visit, just weeks before she completed the MSS, she noted that Plaintiff was "[c]oping well [with] stress" and had "no history of long-term depression, psychiatric or mood disorders." AR 396. Plaintiff also stated during his hearing that he started taking Cymbalta when he was caring for his mother-in-law, who was stricken with Alzheimer's disease, because the situation was "pretty sad." AR 65. He did not testify that he suffered from anxiety or any other mental condition, let alone one reflective of the severity expressed in Ms. Burks' opinion. Instead, the record indicates that Plaintiff "functions fine mentally … does not feel that anxiety keeps him from working … applied [for disability benefits] for physical reasons." AR 331.

In light of the foregoing, the Court finds that substantial evidence supports the ALJ's decision to give no weight to the opinion provided by Ms. Burks. While brief, the ALJ's

explanation for rejecting the opinion includes the inconsistency of the opinion with Ms. Burks' own treatment notes and other medical evidence in the record, as described above. This explanation refutes Plaintiff's claim that the ALJ failed to "provid[e] sufficient reasons" for rejecting the MSS. DE 14 at 12. The Court also reiterates that the opinion of an "other source" cannot establish the existence of an impairment, cannot be given controlling weight, and is "not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014). Therefore, remand would not cure the lack of a medical opinion establishing the existence of a disabling condition. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.") (internal citation omitted). Accordingly, the Court rejects this assertion of error.

## 2. The RFC.

Plaintiff next argues that the RFC ascribed by the ALJ is not supported by substantial evidence. Plaintiff faults the ALJ for failing to obtain an opinion from a consultative examiner to address his physical and mental impairments, emphasizing that an RFC "must be supported by medical opinions." DE 14 at 13.[7]

As an initial matter, the Court notes that it is Plaintiff's burden to prove the existence of a disabling condition, and not the ALJ's burden to disprove the existence of a disability. *Key*, 109 F.3d at 274 (citing *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984)); *see also Jones*,

---

[7] Plaintiff also notes that that the RFC's restriction of sitting, standing, or walking for six hours in an eight-hour workday is "more limited than any hypothetical question from the hearing," and therefore inconsistent with the evidence of record. *Id.*

336 F.3d at 474 ("In the first four steps of the evaluation process delineated by 20 C.F.R. § 404.1520, it is the claimant's burden to prove the existence and severity of limitations caused by [his] impairments."). As previously discussed, Plaintiff has offered no opinion from an acceptable medical source regarding any limitations caused by an allegedly disabling impairment.

Moreover, despite Plaintiff's suggestion that the ALJ was required to rely on a medical opinion in formulating the RFC (DE 14 at 13), the Act clearly instructs that the ALJ, and not a physician, determines a claimant's RFC. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 432(d)(5)(B)); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) (noting that although a physician may opine on a claimant's RFC, "ultimate responsibility for capacity-to-work determinations belongs to the Commissioner") (citing 20 C.F.R. § 404.1527). Plaintiff cites no rule or regulation that would have required the ALJ to provide a consultative examination in this case.

Instead, the ALJ is granted discretionary authority to obtain a consultative examination if she determines that there is insufficient medical evidence to make a determination regarding disability. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); *see also* 20 C.F.R. § 404.1517 ("[The Commissioner] *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added). Thus, with respect to Plaintiff's claim that the ALJ "failed to … develop the record" by opting not to obtain a consultative examination, (DE 14 at 13), the Court notes that development of the record,

> does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision. In appellant's case, the evidence in the record upon which the administrative law judge based his denial

15

of benefits fully developed the facts necessary to make that determination. The [evidence] supports the conclusion that appellant is not disabled ....

*Landsaw*, 803 F.2d at 214 (quoting *Turner v. Califano,* 563 F.2d 669, 671 (5th Cir. 1977)) (emphasis in original).

In his reply brief, Plaintiff presents a commendable argument for reversal based on the Sixth Circuit's decision in *Porzondek v. Sec'y of Health & Human Servs*. In that case, the ALJ determined that the subject claimant was no longer capable of performing medium work, but found that based on the claimant's testimony, he could still perform light work. 985 F.2d 561, 1993 WL 15135, at *2 (6th Cir. 1993) (table decision). The Sixth Circuit reversed the district court's decision to affirm the ALJ's judgment because the record provided "no clear indication that [the claimant] can perform any of the exertional requirements of light work." *Id*. However, unlike the instant case, the ALJ in *Porzondek* failed to rely on *any* consultative reports in making the RFC determination:

> The [Commissioner] could have ordered consultative reports or sought the advice of a medical examiner at [the claimant's] administrative hearing. These actions are discretionary, but the [Commissioner's] failure to exercise that discretion in the present case has resulted in a failure to meet his burden of proof.

*Id*. In contrast, three state agency doctors reviewed Plaintiff's medical records, a psychologist and two medical physicians, with each determining that Plaintiff did not suffer from a severe impairment. AR 332-50. This means that three separate state agency physicians found that Plaintiff's conditions would cause "no more than a minimal effect on [the] individual's ability to work[.]." *Pogue v. Sec'y of Health & Human Servs.*, 836 F.2d 550, 1987 WL 30587, at *2 (6th Cir. 1987) (table decision). Plaintiff argues that these reviewing physicians were not privy to imaging studies conducted after their reviews took place. DE 19 at 5, n.1. Yet the Court notes that the findings of the subsequent studies cited by Plaintiff (AR 453, 456) revealed only mild

degenerative changes that were vastly similar findings to those contained in the imaging studies reviewed by the state agency physicians, including mild degenerative changes at the L4-5 and L5-S1 levels that were present as far back as 2002. AR 287. Substantial evidence therefore supports the ALJ's decision to not utilize the services of a consultative examiner.

Despite this finding, the Court acknowledges the admonition that an ALJ "must not succumb to the temptation to play doctor and make [her] own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). However, the Sixth Circuit has issued this warning in the context of cases involving a well-supported opinion from a treating physician. *See id*. ("[A]n ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.") (quoting *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006)) (internal quotations omitted). Moreover, the determination of the RFC remains exclusively within the purview of the ALJ, *see* 20 C.F.R. § 404.1545(a), and the Sixth Circuit has unequivocally affirmed this authority:

> [T]o require the ALJ to base her RFC finding on a physician's opinion [] would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

*Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (internal citation omitted); *see also Sparrow v. Comm'r of Soc. Sec.*, No. 15-cv-11397, 2016 WL 1658305, at *7 (E.D. Mich. Mar. 30, 2016), *report and recommendation adopted,* No. 15-11397, 2016 WL 1640416 (E.D. Mich. Apr. 26, 2016) ("The ALJ was [] not obligated to draft an RFC assessment which comported with one drafted by a physician, and was instead entitled to create an RFC based on his evaluation of the available medical evidence."). In the case at bar, the ALJ explained that the

RFC was based on objective medical evidence, a lack of credibility regarding Plaintiff's testimony, activities of daily living, and Plaintiff's work history, including the fact that he continued to work as a stocker less than three weeks before the hearing despite testifying that he had not worked since 2010. AR 27-29, 43, 431. The ALJ thus properly exercised her authority to forego a consultative examination. *See Rudd*, 531 F. App'x at 728 ("[T]he ALJ was not required to base her [RFC] determination on a medical opinion, and substantial evidence, including objective medical evidence, supported her decision.").

Plaintiff's additional claim that the RFC exceeds the limitations that were presented to the vocational expert ("VE") during the hearing is also unavailing. The RFC states that Plaintiff "can sit, stand or walk up to six hours in an eight-hour day." AR 27. Plaintiff appears to interpret this as meaning that he can do all three of these activities, measured together, for a maximum of six hours, thus preventing him from being able to complete an eight-hour workday. DE 14 at 13. However, the questions posed to the VE clearly indicate that this restriction involves the capacity to "stand and walk up to 6 hours," as well as "sit up to 6 hours." AR 71. As noted by Defendant, the ALJ specifically asked the VE whether an individual could find competitive employment if he "could not complete an eight-hour day in terms of total number of hours standing and walking and sitting," which the VE confirmed was not possible. AR 72. Plaintiff does not address this explanation in his reply brief, suggesting that he has conceded this argument. Regardless, based on the undersigned's review of the record, the Court finds that the restrictions included in the RFC were not inconsistent with the hypothetical questions posed to the VE. Plaintiff's assertion of error is therefore rejected.

### 3. Plaintiff's credibility.

Plaintiff finally argues that the ALJ improperly evaluated his credibility in violation of SSR 96-7p. DE 14 at 14.[8] Plaintiff contends that the ALJ "failed to make clear the weight" given to his testimony, thus necessitating reversal of the decision. *Id.* at 15. He further argues that the ALJ erroneously determined that no objective evidence supported Plaintiff's claims, and that the ALJ improperly made a "conclusory, exaggerated finding" with respect to Plaintiff's allegations of disabling pain. *Id.* at 15-16.

"Since the ALJ has the opportunity to observe the demeanor of a witness, [her] conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987)); *see also Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992) ("The ALJ's credibility determinations are entitled to great weight.") (internal citation omitted). Claimants who challenge a credibility determination "face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). Here, the Court finds that Plaintiff has lost this particular battle.

Despite Plaintiff's assertions otherwise, the ALJ's credibility analysis is rather extensive and contains several of the "specific reasons" for his determination, as required by SSR 96-7p. 1996 WL 374186, at *2. The ALJ discussed the overwhelmingly mild nature of the imaging studies of Plaintiff's lumbar and cervical spine, including the fact that although one x-ray of the

---

[8] SSR 96-7p has been superseded by SSR 16-3p, which became effective on March 28, 2016. However, because Plaintiff's complaint was filed in June of 2013, SSR 96-7p applies to the Court's analysis of this claim.

cervical spine demonstrated "mild to moderate" degenerative disc disease, it also showed no fracture, no soft tissue swelling, no abnormality causing any impingement on the nerve root, and normal alignment. AR 28.[9] The ALJ also noted that physical examinations of Plaintiff were mostly normal, including one that took place just two weeks before the hearing, which revealed no tenderness or muscle tightness, a negative straight leg raise test, normal neurological functioning without weakness, and normal body movements. AR 28.

Despite this evidence, Plaintiff testified that he experienced pain at a level of 10 on a scale of one to 10, every hour of every day. AR 53. Unsurprisingly, the ALJ was skeptical of this claim, especially in light of the lack of extensive treatment sought by Plaintiff since the alleged onset date. AR 28. Moreover, as explained by the Sixth Circuit, it cannot be said that mild degenerative disc disease "is necessarily so severe a condition as to reasonably be expected to produce disabling pain." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 713 (6th Cir. 1988) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853-54 (6th Cir. 1986)).

The ALJ also discussed Plaintiff's daily activities, which were found to be inconsistent with his allegations of disabling pain that averaged "10 on a 10-point scale" (AR 28), as well as Plaintiff's false testimony that he had not worked since November of 2010. AR 29. The ALJ further noted inconsistencies between Plaintiff's testimony and his statements made in his application materials regarding the alleged onset of his condition, alleged side effects stemming from his medication, and his ability to care for his personal needs. AR 29. Accordingly, the Court finds ample evidence in the ALJ's opinion to support her credibility determination.

_____

[9] The Court also notes that the interpreting radiologist actually stated, "[m]ild to moderate degenerative disk disease is suspected at C5-6, but this level is not well seen." AR 428.

With respect to Plaintiff's claim that the ALJ failed to specify the weight given to Plaintiff's testimony, the Court acknowledges that SSR 96-7p requires the ALJ's credibility findings to be "sufficiently specific," and that the determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]" However, the Sixth Circuit has indicated that SSR 96-7p's requirement that the ALJ identify the weight given to a claimant's statements means simply that "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 259 (6th Cir. 2015). As discussed above, the ALJ offered several examples of inconsistencies to support her finding that Plaintiff's statements regarding the severity of his symptoms were not credible to the extent that they conflicted with the assigned RFC. While the ALJ failed to specifically identify the amount of weight given to Plaintiff's testimony, the discussion in the opinion clearly indicates that she gave Plaintiff's testimony little weight. The Court thus finds that to the extent that the ALJ failed to explicitly identify the weight given to Plaintiff's testimony, such omission represents harmless error.

An ALJ's credibility findings are "virtually unchallengeable," *Ritchie v. Comm'r of Soc. Sec.,* 540 F. App'x. 508, 511 (6th Cir. 2013) (internal citation and quotations omitted), so long as the determination is supported by substantial evidence. *Calvin v. Comm'r of Soc. Sec.,* 437 F. App'x. 370, 371 (6th Cir. 2011) (internal citation omitted). The Court finds substantial evidence to support the ALJ's determination in this matter, and thus rejects Plaintiff's assertion of error.

Based on the foregoing analysis, the Court finds that substantial evidence supports the ALJ's denial of Plaintiff's application for benefits.

## V. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record

(DE 14) is DENIED. An appropriate Order will accompany this memorandum.


BARBARA D. HOLMES
United States Magistrate Judge